UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| FIRST NATIONAL BANK OF OMAHA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:09-CV-191-FL |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for COOPERATIVE BANK, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**FDIC-RECEIVER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Federal Deposit Insurance Company, as Receiver for Cooperative Bank ("FDIC-Receiver"), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, moves for summary judgment on Counts One and Two of the First Amended Complaint of Plaintiff First National Bank of Omaha ("FNBO"). FNBO seeks damages for the repudiation of an irrevocable standby letter of credit. However, the terms of the Letter of Credit itself, and governing legal principles, establish as a matter of law that FNBO is a general unsecured creditor of FDIC-Receiver. As such a creditor, for Count One FBNO may recover only repudiation damages of $225,000 – the face amount of the Letter of Credit – in the form of a Receiver's Certificate. FNBO may not recover attorneys' fees, interest, or costs, and therefore Count Two of the First Amended Complaint should be dismissed.

# I.
## STATEMENT OF MATERIAL UNDISPUTED FACTS

1. Cooperative Bank issued an Irrevocable Standby Letter of Credit in the face amount of $225,000 and dated September 15, 2008 to First National Bank of Omaha as Beneficiary for the account of John J. Burney III as Applicant ("Letter of Credit"). Affidavit of Jeffry M. Quick ("Quick Aff.") ¶ 5 & Ex. 1 thereto; First Amended Complaint ("First Am. Compl.") ¶ 9.

2. The Letter of Credit identifies Cooperative Bank as the "Issuer." Quick Aff. ¶ 5 & Ex. 1.

3. The Letter of Credit provides that "[t]his Letter of Credit sets forth in full the terms of the Issuer's obligations to the Beneficiary. This obligation cannot be modified by any reference in this Letter of Credit, or any document to which this Letter of Credit may be related." *Id*.

4. The Letter of Credit makes no reference to collateral. *Id*.

5. The Letter of Credit states that it shall be governed by "the Uniform Customs and Practice for Documentary Credits, 2006 Revision, International Chamber of Commerce Publication No. 600 (UCP), or any later version or amendment" and "by the laws of North Carolina, the United States of America, so long as such laws are not inconsistent with the UCP . . . ." *Id*.; *see also* First Am. Compl. ¶ 14.

6. On June 19, 2009, Cooperative Bank was placed in receivership and the Federal Deposit Insurance Company ("FDIC") was appointed receiver. First Am. Compl. ¶ 15.

7. By letter dated September 18, 2009, Plaintiff attempted to make a full draw on the Letter of Credit. Quick Aff. ¶ 4.

8. On September 21, 2009, the FDIC-Receiver received Plaintiff's Proof of Claim seeking performance on the Letter of Credit. Quick Aff. ¶ 3; First Am. Compl. ¶ 21.

9. On September 25, 2009, the Receiver repudiated the Letter of Credit. First Am. Compl. ¶ 20.

10. Also on September 25, 2009, the Receiver denied FNBO's Proof of Claim on the grounds that the Letter of Credit had been repudiated. *Id*. ¶ 22.

11. FNBO's actual damages total $225,000. Declaration of Counsel ("Counsel Decl.") ¶3 and Attachment 1 thereto at ¶ 3.

## II.
## ARGUMENT

### A. First National Bank of Omaha Is an Unsecured Creditor of the Receivership Estate

In the Letter of Credit at issue, the parties selected two sources of governing law: (1) the Uniform Customs and Practice for Documentary Credits, 2006 Revision, International Chamber of Commerce Publication No. 600 ("UCP") "or any later version or amendment", and (2) North Carolina law, to the extent not inconsistent with the UCP.[1]  *See* Letter of Credit (Quick Decl. ¶ 5 & Ex. 1 thereto); First Am. Compl. ¶ 14.

The U.S. Court of Appeals for the Fourth Circuit has described the UCP as the "arbiter of mercantile practice". *Consolidated Aluminum Corp. v. Bank of Virginia*, 704 F.2d 136, 138 (4th Cir. 1983). S*ee also Sunset Investments, Ltd. v. Sargent,* 52 N.C. App. 284, 287-88, 278 S.E.2d 558, 561-62 (1981) (applying UCP to letter-of-credit dispute). The UCP, promulgated by the International Chamber of Commerce, was designed to "alleviate the confusion caused by individual countries' promoting their own national rules on letter of credit practice. The

---
[1] A copy of the UCP is attached as Appendix 1.

objective, since attained, was to create a set of contractual rules that would establish uniformity in that practice . . . ." UCP, Foreword (Appendix 1 to this Memorandum).

UCP Article 2 is entitled "Definitions." Three terms defined therein are applicable to the resolution of this dispute:

- "Applicant" is defined as "the party on whose request the credit is issued."
- "Beneficiary" is defined as "the party in whose favour a credit is issued."
- "Issuing Bank" is defined as "the bank that issues a credit at the request of an applicant or on its own behalf."

UCP, Art. 2. Here, as is apparent on the face of the Letter of Credit, the "Applicant" was John J. Burney III, the "Beneficiary" was FNBO, and the "Issuing Bank" was Cooperative Bank. *See* Letter of Credit at p. 1 (Quick Aff. ¶ 5 & Ex. 1 thereto).

Both the UCP and the North Carolina Uniform Commercial Code codify the well-established "independence principle" in letter-of-credit law. According to that principle, a letter of credit is a contractual agreement, between the issuing bank and the beneficiary, which is entirely independent of the underlying contractual agreement between the issuing bank and the applicant. As Article 4 of the UCP provides:

> A Beneficiary can in no case avail itself of the contractual relationship existing between banks or between the applicant and the issuing bank.

Section 5-103(d) of the North Carolina Uniform Commercial Code similarly provides as follows:

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

N.C. Gen. Stat.§ 25-5-103(d).

As the North Carolina Court of Appeals has explained, the typical letter of credit transaction involves three separate contracts: (1) the letter of credit itself, which is a contract

between the issuer and the beneficiary; (2) the contract between the issuing bank and the customer for the issuance of the credit; and (3) the underlying commercial agreement between the beneficiary and the account party. *Sunset Investments*, 52 N.C. App. at 287, 278 S.E.2d at 561. Each of these three contracts is independent from the other two.

> Fundamental to the letter of credit transaction is the principle that "the issuing bank's obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement."

*3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 741 (2d Cir. 1999) (*quoting First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 294, 486 N.Y.S.2d 715, ___, 475 N.E.2d 1255, 1259 (1985)); *see also Sunset Investments*, 52 N.C. App. at 287, 278 S.E.2d at 561 ("One of the must crucial features of the commercial letter of credit is its complete separation from the underlying transaction.")

Under North Carolina law, the Court's interpretation of the Letter of Credit is further guided by the settled rule that a clear and unambiguous agreement must be interpreted according to its plain meaning. *CB&H Business Svcs., L.L.C. v. J.T. Comer Consulting, Inc.*, 184 N.C. App. 720, 722, 646 S.E.2d 843 (2007) (citing *Lowe v. Jackson*, 263 N.C. 634, 636, 140 S.E.2d 1, 2 (1965)).

> Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.

*Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282, *rev. denied*, 359 N.C. 631, 616 S.E.2d 234 (2005).

In this case, the Letter of Credit is the operative document – and, indeed, the *only* document – that the Court must interpret to resolve the dispute between the parties. As the Fourth Circuit has held, in construing a letter of credit under the UCP and the North Carolina Uniform Commercial Code, an issuing bank's "duties and liability are governed exclusively by the terms of the letter [of credit] . . . ." *Courtaulds North Am., Inc. v. North Carolina Nat'l Bank*, 528 F.2d 802, 806 (4th Cir. 1975). *Courtaulds* emphasized that the issuing bank "is not to be embroiled in disputes between the buyer[-account party/applicant] and the seller, the beneficiary of the credit." *Id*. This ruling should be applied to the straightforward facts of this case.

Here, the Letter of Credit was issued by Cooperative Bank in favor of FNBO in the amount of $225,000. *See* Letter of Credit at p. 1 (Quick Aff. ¶ 5 & Ex. 1 thereto). The operative language states:

> LETTER OF CREDIT. Issuer establishes this Irrevocable Standby Letter of Credit in favor of Beneficiary in the amount indicated above. Beneficiary may draw on this Letter of Credit with a Draft . . . together with the documents described below. . . .
>
> This Letter of Credit sets forth *in full* the terms of the Issuer's obligations to the Beneficiary. This obligation cannot be modified by any reference in this Letter of Credit, or any document to which this Letter of Credit may be related.

*Id*. (emphasis supplied). The remaining terms of the Letter of Credit address the expiration date, the manner of drawing upon the letter, its transferability, and the applicable law. *Id*. at pp. 1-2.

In its Complaint, FNBO alleges in paragraphs 10, 17 and 28 that certain certificates of deposit serve as collateral for the Letter of Credit. First Am. Compl. at ¶¶ 10, 17, 28. However, FNBO does not cite to any provision of the Letter of Credit that provides for, or even mentions, the existence of any collateral backing the Letter of Credit for FNBO's benefit. Thus, the plain terms of the Letter of Credit provide no support for FNBO's claim that the Letter of Credit

created a security interest in any collateral in favor of FNBO. FNBO's claim to the contrary does not accord with the contract as written, and therefore must be rejected. *Hemric*, 169 N.C. App. at 76, 609 S.E.2d at 282.

Nor can Plaintiff go behind the Letter of Credit to claim secured status by injecting itself into the separate contract between Cooperative Bank and John J. Burney III . The well-settled independence principle forecloses this argument altogether. *See* UPC Art. 4; N.C. Gen. Stat. § 25-5-103(d). Se*e also 3Com Corp.*, 171 F.3d at 741; *Sunset Investments*, 52 N.C. App. at 287, 278 S.E.2d at 561. That the applicant for the Letter of Credit, John J. Burney III, pledged collateral to Cooperative Bank to obtain the Letter of Credit, cannot transform Plaintiff into a secured creditor nor create a security interest in favor of Plaintiff. Any such pledge has no bearing whatsoever on the separate and independent agreement between Cooperative Bank and FNBO.

The futility of FNBO's claim is demonstrated by the case of *In re Dairy Mart Convenience Stores*, 351 F.3d 91 (2d Cir. 2003). There, a letter of credit beneficiary similarly sought status as a secured creditor, on the grounds that the letter of credit applicant had furnished collateral to the bank to obtain the letter of credit. *Dairy Mart*, 351 F.3d at 91. The letter of credit beneficiary claimed it had a security interest in the collateral. The Second Circuit squarely rejected this claim. As it explained:

> The letter of credit creates a conditional claim on the assets of the bank; it does not create a security interest in the assets of [the applicant]. While the issuing bank may have enjoyed a secured claim on [the applicant's] estate if [the beneficiary] had succeeded in collecting under the letter of credit, [the beneficiary] itself is an unsecured creditor vis-à-vis the [applicant's] estate . . . .

*Id*. In other words, there is no contractual privity between the beneficiary and the applicant on a letter of credit.

Similarly, in the case of *In re Allegiance Telecom, Inc.*, 356 B.R. 93 (Bankr. S.D.N.Y. 2006), the district court rejected a beneficiary's claim to cash and certificates of deposit posted as collateral for several letters of credit. Informed by the independence principle, the court reasoned that "given the tripartite nature of letters of credit, a beneficiary/landlord would not have a security interest in the letter of credit, let alone the cash securing Allegiance's reimbursement obligation to the letter of credit issuer."
*Allegiance Telecom*, 356 B.R. at 112-13.

This Court recognized the independence principle's application to this dispute in its Order of April 27, 2010. The Court observed that "plaintiff['s] argument fails to take into account that the letter of credit was a separate contract from defendant's right of reimbursement from Burney." Order at 4-5 [Docket No. 29] (citing *Provident Bank of Md. v. Travelers Prop. Cas. Co.*, 236 F.3d 138, 147 (4th Cir. 2000)). Thus, any funds that Cooperative Bank secured from John J. Burney III to back the letter of credit are the subject of a distinct transaction that is fully insulated from the beneficiary. *See* UPC Art. 4; N.C. Gen. Stat. § 25-5-103(d); *see also Dairy Mart*, 351 F.3d at 91 ("It is the nature of a letter of credit (as well as its utility) that the obligation to the beneficiary . . . runs from the bank" and not from the applicant).

In sum, the Letter of Credit sets forth in full the terms of Cooperative Bank's (and thus FDIC-Receiver's) obligations to FNBO. By its terms, the Letter of Credit did not grant FNBO a security interest in any collateral that John J. Burney III, as applicant, pledged to Cooperative Bank. FNBO is merely an unsecured creditor of the receivership estate.

**B.     As an Unsecured Creditor, First National Bank of Omaha Is Entitled Only to a Receiver's Certificate as Pro-Rata Payment of Its Damages**

As this Court previously ruled, FDIC-Receiver acted properly in repudiating the Letter of Credit; its liability to FNBO is thus statutorily limited to "actual direct compensatory damages" determined as of the date of the Receiver's appointment. Order of April 27, 2010 at 4-6 (quoting 12 U.S.C. § 1821(e)(3)(A)). Three provisions in Title 12 govern the manner and form of payment of those damages. First, the FDIC, as receiver, is authorized to "pay creditor claims . . . in such manner and amounts as are authorized under this chapter." 12 U.S.C. § 1821(d)(10)(A). Second, the payment of Class 3 claims against a failed bank, which are the claims of general unsecured creditors like FNBO, are limited to "actual direct compensatory damages".[2] *Id*. at § 1821(d)(11)(A)(iii). Finally, an unsecured creditor of an FDIC receivership, like FNBO here, is entitled only to the amount of receivership assets it would have obtained had the institution been liquidated (the "ratable distribution" rule):

> The maximum liability of the [FDIC], acting as receiver or in any other capacity, to any person having a claim against the receiver or the insured depository institution for which such receiver is appointed shall equal the amount such claimant would have received if the [FDIC] had liquidated the assets and liabilities of such institution . . . .

*Id*. at § 1821(i)(2).

Based on these three statutory provisions, "[t]here is no question that the FDIC may pay creditors with receiver's certificates instead of with cash." *Battista v. F.D.I.C. as Receiver for Bank of Newport*, 195 F.3d 1113, 1116 (9th Cir. 1999) (citing *Resolution Trust Corp. as Receiver*

---

[2] See 12 U.S.C. § 1821(d)(11), a copy of which is attached as Appendix 2. The National Depositor Preference Act (NDPA) established that creditors of a failed bank, other than secured claims to the extent of the security, be paid in the following order of priority: (1) Class 1 claims are the receiver's administrative expenses, 12 U.S.C. § 1821(d)(11)(A)(i); (2) Class 2 claims are the failed institution's deposit liabilities, *id*. § 1821(d)(11)(A)(ii); (3) Class 3 claims are general liabilities of the bank, *id*. § 1821(d)(11)(A)(iii); (4) Class 4 claims are obligations subordinated to depositors or general creditors, *id*. § 1821(d)(11)(A)(iv); and Class 5 claims are obligations to shareholders or members arising out of their status as such, *id*. § 1821(d)(11)(A)(v).

9

*for Occidental Nebraska Savings Bank, F.S.B. v. Titan Financial Corp.*, 36 F.3d 891, 892 (9th Cir. 1994) (*per curiam*)). The United States District Court for the District of Columbia similarly has held that "it is well established that payment through delivery of a receivership certificate, even one that never has any cash value, is all that is required to fully compensate [receivership] creditors." *Adagio Inv. Holding Ltd. v. F.D.I.C.*, 338 F.Supp.2d 71, 74 n.4 (D.D.C. 2004).

In *Titan*, the Ninth Circuit concluded that the FDIC could use receivership certificates to pay claims because requiring cash payments would subvert the comprehensive scheme under the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), including section 1821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro-rata share of the proceeds from liquidation of a financial institution's assets. *See Titan*, 36 F.3d at 892. In *Battista*, the Ninth Circuit reaffirmed this holding, noting that "[t]o require the FDIC to pay certain creditors in cash would allow those creditors to 'jump the line,' recovering more than their pro rata share of the liquidated assets, if the financial institution's debts exceed its assets." *Battista*, 195 F.3d at 1116-17. And in *Franklin Bank v. F.D.I.C. as Receiver for Financial Center Bank, N.A.*, 850 F. Supp. 845 (N.D. Cal. 1994), the Court reasoned that the FDIC's tender of a receiver's certificate in the full amount of an arbitration award constituted full payment and satisfaction of the claim, "because the receiver's certificate was the 'manner' of payment chosen by the FDIC pursuant to 12 U.S.C. § 1821(d)(10)(A)." *Franklin Bank*, 850 F. Supp. at 847.

The holdings of *Titan*, *Adagio*, *Battista* and *Franklin Bank* are fully applicable here. FIRREA permits FDIC-Receiver to select the manner of payment for general unsecured claimants and limits such claimants' recovery to an appropriate pro-rata share of the receivership estate, payable according to the statutory priority scheme. Accordingly, FNBO's actual compensatory damages are payable by receiver's certificate.

### C. Plaintiff's Receivership Certificate Amount Is Limited to the $225,000 Face Value of the Letter of Credit

FNBO admits that its actual damages total $225,000, the face value of the Letter of Credit. Counsel Decl., ¶3 and Attachment 1 thereto at ¶ 3. Based on the Court's April 27, 2010 ruling rejecting the FDIC-Receiver's position that the Letter of Credit is a contingent liability giving rise to no damages, and without waiving its rights to appeal that ruling, the FDIC-Receiver stipulates to FNBO's $225,000 actual damages figure. However, FNBO's claim for attorney's fees, costs and interest is not statutorily cognizable and therefore must be rejected.

In FIRREA, Congress adopted restrictive rules that limit the damages permitted for repudiated contracts. Repudiation damages for contracts, such as the Letter of Credit at issue here, are limited to actual direct compensatory damages determined as of the date of the appointment of the receiver. 12 U.S.C. § 1821(e)(3)(A)(i). That is, recoverable damages are limited to sums that "have accrued and become unconditionally fixed on or before the time the bank was declared insolvent" and the FDIC appointed receiver. *Marsa v. Metrobank for Sav., F.S.B.*, 825 F. Supp. 658, 667 & n. 10 (D.N.J. 1993) (noting that section 1821(e) codified the federal common law rule), *aff'd*, 26 F.3d 122 (3d Cir. 1994). *See also Pioneer Bank & Trust Co. v. Resolution Trust Corp.*, 793 F. Supp. 828, 831 (N.D. Ill. 1992) (same).

As a consequence, the FDIC-Receiver is not liable for future or contingent obligations. *Marsa*, 825 F. Supp. at 666 (collecting cases); *First Nat'l Bank v. Unisys Finance Corp.*, 779 F. Supp. 85, 87 (N.D. Ill. 1991). In particular, the FDIC-Receiver is not liable for attorneys' fees, costs and interest accrued after the Receiver's appointment, all of which "constitute future damages and are, therefore, not recoverable . . . ." *Marsa*, 825 F. Supp. at 667 n.11. Such items have not accrued on the date of the Receiver's appointment and thus have not become

11

Case 7:09-cv-00191-FL   Document 35   Filed 07/01/10   Page 11 of 13

unconditionally fixed at that time. *See id*. at 667; *see also Battista*, 195 F.3d at 1120 (prejudgment interest not available against the FDIC in its receivership capacity because Congress did not expressly waive its immunity against prejudgment interest by statute). Thus, Plaintiff may not recover attorneys' fees, costs and interest in this case.

Moreover, a prevailing party ordinarily cannot recover attorneys' fees unless federal law provides for them. Since the U.S. Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975), the general federal rule has been that, absent an express statutory command, attorneys' fees will not be awarded in civil cases. *Id*. at 262 ("[T]he circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine."); s*ee also Donovan v. Burlington Northern, Inc*., 781 F.2d 680, 682 (9th Cir. 1986) ("In this country, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser'") (quoting *Alyeska*, 421 U.S. at 247).

In the instant case, FNBO's claim for attorneys' fees is governed by FIRREA, which limits the recovery available to plaintiffs to actual direct compensatory damages incurred as of the date of the appointment of the Receiver. 12 U.S.C. § 1821(e)(3). As noted above, FIRREA does not allow recovery of any damages incurred after appointment, nor does FIRREA expressly provide for the recovery of attorneys' fees. Given the absence of an express statutory grant, and the strict limitation on recovery of damages, FNBO is not entitled to recover attorneys' fees from the FDIC-Receiver.

# III.
# CONCLUSION

For the foregoing reasons, judgment should issue in favor of First National Bank of Omaha on Count One of its First Amended Complaint for $225,000, payable by a receiver's certificate. Count Two of the Complaint should be dismissed with prejudice against the FDIC-Receiver.

This the 1st day of July, 2010.

Respectfully submitted,

| | |
|---|---|
| *Of Counsel*: | s/J. Jerome Hartzell |
| | J. Jerome Hartzell |
| Ashley Doherty, Senior Counsel | N.C. State Bar No. 7775 |
| Susan Kantor Bank, Counsel | Hartzell & Whiteman, LLP |
| Lynne M. Baum, Counsel | 2626 Glenwood Ave., Suite 500 |
| Federal Deposit Insurance Corporation | Raleigh, NC  27608 |
| Legal Division | P:  919/571-8300 |
| 3501 Fairfax Drive, Room VS-D-7126 | F:  919/571-1004 |
| Arlington, Virginia 22226 | jjh@hwlawyers.com |
| (703) 562-2389 | |
| | *Attorneys for Defendant Federal Deposit Insurance Corporation, as Receiver for Cooperative Bank* |